UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 24-25087-CV-WILLIAMS

KATTIA GARN,

    Plaintiff,

v.

SOUTH FLORIDA STADIUM LLC, *et al.*,

    Defendants.

_____/

**ORDER**

**THIS MATTER** is before the Court on Defendants South Florida Stadium LLC ("**SFS**") and Confederation of North, Central America and Caribbean Association Football's[1] ("**CONCACAF**") Motion to Compel Arbitration (DE 17) ("**Motion**"). The Motion is fully briefed and ripe for review.[2] For the reasons set forth below, the Motion (DE 17) is **DENIED**.

**I. BACKGROUND**

This is a putative class action arising out of events that occurred during the July 14, 2024 CONMEBOL Copa América final championship game (the "**Game**") between Colombia and Argentina. (DE 1-2 at 4.)[3] Plaintiff Kattia Garn ("**Garn**") purchased a ticket to the Game via Ticketmaster. (*Id.* at 4; DE 17 at 7.) To complete the purchase, Garn was

---

[1] Although the original Motion was filed by SFS, CONCACAF joined the Motion in full. (DE 48; DE 50.)

[2] Plaintiff Kattia Garn filed a Response (DE 40), and Defendants filed a Reply (DE 52).

[3] The Court uses CM-ECF generated page numbers, which appear in the top right corner of all filings.

required to accept Ticketmaster's Terms of Use, which included the following arbitration agreement (the "*Agreement*") relevant to the Motion:

> **17. Mandatory Arbitration Agreement and Class Action Waiver**
> **YOU AND WE EACH AGREE THAT, EXCEPT AS PROVIDED BELOW, ANY DISPUTE, CLAIM, OR CONTROVERSY RELATING IN ANY WAY TO THE TERMS, YOUR USE OF THE SITE, OR PRODUCTS OR SERVICES SOLD, DISTRIBUTED, ISSUED, OR SERVICED BY OR THROUGH US—IRRESPECTIVE OF WHEN THAT DISPUTE, CLAIM, OR CONTROVERSY AROSE—WILL BE RESOLVED SOLELY BY BINDING, INDIVIDUAL ARBITRATION AS SET FORTH IN THE TERMS, RATHER THAN IN COURT. YOU AND WE THEREBY EACH AGREE TO WAIVE ANY RIGHT TO A JURY TRIAL, AND AGREE THAT YOU AND WE MAY BRING CLAIMS AGAINST EACH OTHER ONLY IN AN INDIVIDUAL CAPACITY, AND NOT AS A PLAINTIFF OR CLASS MEMBER IN ANY PURPORTED CLASS OR REPRESENTATIVE PROCEEDING.**

(DE 17-4 at 15–16.) The Terms of Use also included a Delegation Clause as follows:

> **Delegation; Interpretation.** The arbitrator, and not any federal, state or local court or agency, shall have exclusive authority to the extent permitted by law to resolve all disputes arising out of or relating to the interpretation, applicability, enforceability, or formation of this Agreement, including, but not limited to, any claim that all or any part of this Agreement is void or voidable; however, in the event of a dispute about which particular version of this Agreement you agreed to, a court will decide that specific question. This arbitration agreement is intended to be broadly interpreted and will survive termination of the Terms.

(*Id.* at 19.)

On the day of the Game, Garn arrived at the venue, presented her ticket, and was admitted. (DE 1-2 at 5.) However, Garn alleges that numerous other individuals—without tickets—were permitted to enter the venue resulting in "chaos" which caused Garn to feel "trapped, under extreme duress, unable to freely move . . .[and] in imminent threat and fear of being stampeded and trampled." (*Id.*) Garn further alleges that she sustained unwanted physical contact with others as a result of the overcrowding in the venue. (*Id.*)

Ultimately, the Game was delayed and Garn left the venue well before the end of the Game. (*Id.*)

Five days later, Garn filed this action in the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County. (DE 1-2.) In the Complaint, Garn alleges that SFS and CONCACAF, along with Defendant Confederacion Sudamerica de Futbol ("***Conmebol***"),[4] "provided grossly inadequate security and surveillance" at the Game. (*Id.* at 5.) The Complaint includes four claims: Violation of the Florida Deceptive and Unfair Trade Practices Act (Count I); Unjust Enrichment (Count II); Breach of Contract (Count III); Negligence (Count IV). (DE 1-2.) On December 26, 2024, SFS timely removed the action to this Court pursuant to the Class Action Fairness Act of 2005 ("***CAFA***"),[5] 28 U.S.C. § 1332(d). (DE 1.) Now, Defendants SFS and CONCACAF (collectively, "***Defendants***") seek to compel arbitration based on the Ticketmaster Terms of Use Agreement. (DE 17.)

## II. LEGAL STANDARD

"Under the [Federal Arbitration Act ("***FAA***")], upon motion of a party, district courts must compel arbitration of all claims subject to arbitration." *Ford of Kendall, LLC v. Lemus*, No. 24-10831, 2024 WL 4449455, at *3 (11th Cir. Oct. 9, 2024) (quoting *Am. Exp. Fin. Advisors, Inc. v. Makarewicz*, 122 F.3d 936, 940 (11th Cir. 1997)). The FAA's policy favoring arbitration "is about treating arbitration contracts like all others, not about

---

[4] Defendant Conmebol has not yet been served.

[5] "CAFA gives federal courts jurisdiction over certain class actions, defined in § 1332(d)(1), if the class has more than 100 members, the parties are minimally diverse, and the amount in controversy exceeds $5 million." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 84–85 (2014).

fostering arbitration." *Morgan v. Sundance, Inc.*, 596 U.S. 411, 418 (2022). "Accordingly, a court must hold a party to its arbitration contract just as the court would to any other kind." *Id.* However, "[w]hether a party has agreed to arbitrate an issue is a matter of contract interpretation: A party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *Telecom Italia, SpA v. Wholesale Telecom Corp.*, 248 F.3d 1109, 1114 (11th Cir. 2001) (citations omitted).

## III. DISCUSSION[6]

### A. Florida law governs the Court's analysis.

As an initial matter, the Parties disagree over whether Florida or California law applies to the Court's analysis. As a federal district court sitting in diversity, the Court applies Florida choice-of-law rules. *See In re Jan. 2021 Short Squeeze Trading Litig.*, 76 F.4th 1335, 1346 (11th Cir. 2023). "Florida conflict of law rules dictate that courts should apply *lex loci contractus*, or the law of the state where the contract was made, to questions of contracts." *Am. United Life Ins. Co. v. Martinez*, 480 F.3d 1043, 1059 (11th Cir. 2007). Using the principal of *lex loci contractus*, "[a] contract is created where the last act necessary to make a binding agreement takes place." *D.L. Peoples Grp., Inc. v. Hawley*, 804 So. 2d 561, 563 (Fla. Dist. Ct. App. 2002).

Defendants argue that the relevant last act was Garn clicking accept to the Agreement from her computer in Florida. Conversely, Garn argues the last act was

---

[6] The Parties' disputes are numerous and the briefing on the Motion raises issues and arguments that the Court need not address to resolve the Motion. Therefore, the Court focuses only on arguments that affirmatively impact the resolution of the Motion and reserves commenting on the validity or necessity of the remaining superfluous arguments raised by the Parties.

Ticketmaster sending a confirmation email from its headquarters in California. Federal courts applying Florida law have held that under *lex loci contractus*, clicking accept is the last act needed to confirm similar terms and conditions contracts. *See Calderon v. Sixt Rent a Car, LLC*, No. 19-62408-CIV, 2021 WL 1325868, at *6 n.3 (S.D. Fla. Apr. 9, 2021); *Rimel v. Uber Techs., Inc.*, No. 615CV2191ORL41KRS, 2016 WL 6246812, at *5 (M.D. Fla. Aug. 4, 2016), *report and recommendation adopted*, 246 F. Supp. 3d 1317 (M.D. Fla. 2017) ("[T]he logical inference is that he accepted the agreement and the Arbitration Provision by clicking 'Yes, I Agree' while he was in Florida. Therefore, Florida law applies to the Arbitration Provision."). Accordingly, Florida law applies here.

### B. The Delegation Clause does not end the Court's analysis.

When an arbitration agreement includes a delegation clause, the Court's review is initially limited to any direct challenge to the delegation clause. *Parm v. Nat'l Bank of California, N.A.*, 835 F.3d 1331, 1334–35 (11th Cir. 2016). "Only if [the Court] determine[s] that the delegation clause is itself invalid or unenforceable may [the Court] review the enforceability of the arbitration agreement as a whole." *Id.* Nonetheless, "the mere presence of a delegation clause in a contract is not dispositive of the court's disposition of the case." *Bodine v. Cook's Pest Control Inc.*, 830 F.3d 1320, 1324 (11th Cir. 2016).

Although delegation clauses can remove judicial review of the question of arbitrability,

> courts must first determine: (1) whether a valid arbitration agreement exists; and (2) who has the authority to determine gateway issues concerning arbitrability—i.e., whether the arbitration agreement contains a delegation provision. If a valid arbitration agreement contains a delegation provision, courts must then determine: (1) if the delegation provision applies to the relevant gateway issue of arbitrability; (2) whether the claimant challenged the delegation provision directly (rather than challenging the arbitration

agreement as a whole); and, if so, (3) whether the delegation provision is enforceable under the FAA.

*Dunn v. Glob. Tr. Mgmt., LLC*, No. 21-10120, 2024 WL 4379966, at *8 (11th Cir. Oct. 3, 2024). Here, Garn has directly challenged both the delegation provision and the Agreement in its entirety. The Eleventh Circuit's analysis in *Lubin v. Starbucks Corporation* is instructive. 122 F.4th 1314 (11th Cir. 2024). In that case, Lubin—the spouse of a former Starbucks employee, who had been covered by Starbucks' Welfare Benefits Plan through his wife—brought a putative class action against Starbucks. *Id.* Starbucks moved to compel arbitration based on arbitration and delegation clauses included within the employment agreement signed by Lubin's wife. *Id.* Like Defendants here, Starbucks argued that the delegation clause of the agreement granted exclusive jurisdiction to an arbitrator to determine whether Lubin was required to arbitrate his claims. *Id.* at 1319. In ruling against arbitration, the Eleventh Circuit held that:

> Lubin is not a party to the delegation clause. And absent an agreement between Lubin and Starbucks, a court cannot compel the parties to settle their dispute in an arbitral forum. Arbitration agreements are no more enforceable than an average contract, and we may not devise novel rules to favor arbitration over litigation. The delegation clause, just like every other clause in the arbitration agreement, was between Starbucks and Lubin's wife, not Lubin. We thus conclude that the terms of the arbitration agreement do not require Lubin to arbitrate his claim against Starbucks, absent another principle of law or equity.

*Id.* at 1320–21.

Here, although the roles of party and non-party are reversed, the same contractual principles apply. "A rule of contract law is that one who is not a party to an agreement cannot enforce its terms against one who is a party." *Lawson v. Life of the S. Ins. Co.*, 648 F.3d 1166, 1167 (11th Cir. 2011). Even assuming that the Agreement in the

Ticketmaster Terms of Use is a valid and enforceable arbitration agreement—an issue the Court need not, and, indeed, cannot due to the delegation clause, resolve for the purposes of this Motion—the Agreement is between Garn and Ticketmaster, not Garn and Defendants. Accordingly, the Court finds that the delegation clause alone, does not entitle Defendants to compel arbitration, and the Court must consider whether other principles entitle Defendants to compel arbitration.

## C. Theories of agency and equitable estoppel do not entitle Defendants to compel arbitration against Garn.

"The issue of whether a non-signatory to an agreement can use an arbitration clause in that agreement to force a signatory to arbitrate a dispute between them is controlled by state law." *Kroma Makeup EU, LLC v. Boldface Licensing + Branding, Inc.*, 845 F.3d 1351, 1354 (11th Cir. 2017). Defendants contend that principles of agency and equitable estoppel entitle them to compel arbitration based on the Agreement between Garn and Ticketmaster.

Defendants argue that they may compel arbitration based on their principal-agent relationship with Ticketmaster while Garn disputes the existence of any such relationship. The Court notes that the Ticketmaster Purchase Policy, which is hyperlinked from the Agreement, states: "We act as the agent to those who provide events, such as artists, venues, teams, fan clubs, promoters, and leagues (the 'Event Organizer')." (DE 17-15 at 3.) However, the main text of the Agreement makes no reference to any agent or principal relationship between Ticketmaster and any other parties. Nonetheless, the Court need not opine on whether a principal-agent relationship between Ticketmaster and Defendants existed because, even if one did, Defendants' argument still fails.

"[D]istrict courts have found that a mere agency relationship between a signatory and a non-signatory is insufficient to allow the non-signatory to compel arbitration."[7] *Rodriguez v. NCL (Bahamas) Ltd.*, No. 24-CV-23695, 2025 WL 472427, at *9 (S.D. Fla. Feb. 12, 2025). Instead, Florida law permits a non-signatory alleging an agent-principal relationship to compel arbitration where

> the signatory to a written agreement containing an arbitration clause must rely on the terms of the written agreement in asserting its claims against the nonsignatory or when the signatory to the contract containing a[n] arbitration clause raises allegations of substantially interdependent and concerted misconduct by both the nonsignatory and one or more of the signatories to the contract.

*Koechli v. BIP Int'l, Inc.*, 870 So. 2d 940, 944 (Fla. Dist. Ct. App. 2004) (cleaned up) ("We reject the broad construction of the agency exception urged by appellants, which would permit a non-signatory agent to a signatory to invoke arbitration simply because the agency relationship exists."). As Garn does not bring any claims against Ticketmaster, only the first theory of liability articulated in *Koechli*—one of equitable estoppel—is relevant here.

"[E]quitable estoppel precludes a party from claiming the benefits of some of the provisions of a contract while simultaneously attempting to avoid the burdens that some other provisions of the contract impose." *Bahamas Sales Assoc., LLC v. Byers*, 701 F.3d 1335, 1342 (11th Cir. 2012). "A party relies on the terms of a contract when the party's claims are intimately founded in and intertwined with the underlying contract obligations." *Id.* at 1343 (citations omitted). The Parties dispute whether Garn's claims meet this

---

[7] Had Ticketmaster been Defendants' agent for the purposes of crowd control or venue security at the Game, the Court's analysis might have been different.

standard. Defendants argue that Garn's claims are all premised upon her having a ticket to attend the Game. In Response, Garn argues that her claims are not premised on her ability to enter the venue but arise from Defendants' "reckless management" and "the law of premises liability." (DE 40 at 19.) While neither position is compelling, the Court finds Garn's argument has more merit.

In evaluating the propriety of equitable estoppel, "it is not enough for a plaintiff's allegations to rely simply on the fact that an agreement exists; the test is whether they rely on or depend on the terms of the written agreement." *Lavigne v. Herbalife, Ltd.*, 967 F.3d 1110, 1119 (11th Cir. 2020). "When a plaintiff fails even to mention any of the terms, much less discuss them in detail, we are hard-pressed to conclude that he or she relied on such terms." *Id.* In the Complaint, Garn never mentions any of the terms of the Agreement. In fact, her Complaint makes no reference to the Agreement at all. To the extent that Defendants argue that had Garn not purchased a ticket, she never would have been at the Game (or that Garn uses tickets to distinguish her proposed class), the Court acknowledges the truth of this sequential reasoning. Nevertheless, "[a] but-for relationship between the claims and the contract alone is not enough to warrant equitable estoppel." *Bahamas Sales Assoc., LLC*, 701 F.3d at 1343. "[F]or [the equitable estoppel] exception to apply, the claim must, at a minimum, raise some issue the resolution of which requires reference to or construction of some portion of the contract itself." *Allscripts Healthcare Sols., Inc. v. Pain Clinic of Nw. Fla., Inc.*, 158 So. 3d 644, 647 (Fla. Dist. Ct. App. 2014) (citations omitted). While Garn references her ticket, which she purchased by entering into the Agreement with Ticketmaster, none of her claims are premised on enforcing or interpreting any provisions of the Agreement.

The Court recognizes that Count III of Garn's Complaint is one for breach of contract. Defendants point to this count as evidence that Garn's claims are intertwined with the Agreement. However, a full reading of the Complaint makes clear that this is an alternative pleading strategy by Garn's counsel. Count II of the Complaint is for unjust enrichment. "[A]n unjust enrichment claim and a breach of contract claim may be plead simultaneously so long as the existence of the contact [sic] has not been proven and the parties have not otherwise stipulated to the existence of a contract." *Luv N' Care, Ltd. v. Hakim*, No. 24-CV-22236, 2024 WL 4948976, at *5 (S.D. Fla. Dec. 3, 2024) (citing *Sierra Equity Grp., Inc. v. White Oak Equity Partners, LLC*, 650 F. Supp. 2d 1213, 1229 (S.D. Fla. 2009)). Thus, a complete reading of the Complaint makes clear that Garn's counsel is engaged in standard alternative pleading, alleging liability under both a theory of unjust enrichment and an implied contract between the Parties. Defendant's agency and equitable estoppel arguments fail.[8]

### D. Defendants cannot compel arbitration of this action based on a third-party beneficiary theory.

"A non-party to a contract containing an arbitration clause may compel parties to the contract to arbitrate if it is determined the non-party is a third-party beneficiary to the contract." *Mims v. Glob. Credit & Collection Corp.*, 803 F. Supp. 2d 1349, 1354 (S.D. Fla. 2011). "Under Florida law, a third party is an intended beneficiary of a contract between two other parties only if a direct and primary object of the contracting parties was to confer

---

[8] For the same reason that Defendants cannot compel Garn to arbitrate based on an agreement they are not party to, Defendants similarly cannot strike Garn's class allegations based on the class waiver clause contained in the same agreement.

a benefit on the third party." *Bochese v. Town of Ponce Inlet*, 405 F.3d 964, 982 (11th Cir. 2005). Defendants again rely heavily on the language of the Purchase Policy to undergird their third-party beneficiary argument, as it makes references to Event Organizers.[9] However, a few vague allusions to a broad group is not sufficient to establish a third-party beneficiary relationship which can only be found "if the contract clearly express[es] an intent to primarily and directly benefit the third party or a class of persons to which that party belongs." *Morgan Stanley DW Inc. v. Halliday*, 873 So. 2d 400, 403 (Fla. Dist. Ct. App. 2004); *see also Liu v. Wu*, No. 23-21541-CV, 2024 WL 516960, at *5 (S.D. Fla. Jan. 5, 2024) ("In the absence of any specific mention of the third party, it would be extraordinarily difficult for that party to establish that under Florida law he was an intended beneficiary, since an intent to benefit a third party which must be inferred from contradicted evidence cannot be characterized as apparent, direct or primary.") (cleaned up). Accordingly, Defendants' third-party beneficiary argument fails.

## IV. CONCLUSION

For the reasons set forth above, it is **ORDERED AND ADJUDGED** as follows:

1. Defendants South Florida Stadium LLC and Confederation of North, Central America and Caribbean Association Football's Motion to Compel Arbitration (DE 17) is **DENIED**.

2. Defendants South Florida Stadium LLC and Confederation of North, Central America and Caribbean Association Football's Motion to Stay All Deadlines

---

[9] Other sections of the Ticketmaster Terms of Use related to limitation of liability, indemnification, and COVID-19 also reference Event Organizers—although they are not mentioned anywhere within the arbitration provision.

Other than Motion to Compel Arbitration Briefing (DE 47) is **DENIED AS MOOT**. The Court will shortly enter a scheduling order.

**DONE AND ORDERED** in Chambers in Miami, Florida, on this <u>26th</u> day of March, 2025.

KATHLEEN M. WILLIAMS
UNITED STATES DISTRICT JUDGE